Okay, Mr. Franklin. Thank you, Your Honors, and may it please the Court, Jonathan Franklin for the appellant Vicinay Cadenas. With me at council table is Mark Baker. We are before the Court on this interlocutory appeal because the District Court erroneously and utterly refused to stay this litigation pending arbitration. This case, which is now set for trial beginning September 11th of this year, involves a highly specialized underwater tether chain that was custom made by Vicinay Cadenas pursuant to contractual specifications originally set forth by Petrobras. There are two contracts in the case, each of which contains a broad arbitration provision. Petrobras contracted with its prime contractor, Technip, which then subcontracted with Vicinay Cadenas. Originally Petrobras asserted only federal admiralty law claims, which led to dismissal of its case. Then Petrobras and its insurers successfully convinced the panel of this Court to override their own choice of law and hold that Louisiana law governed, even though Petrobras had raised the choice of law for the first time on appeal. Then on remand, Petrobras amended its complaint to add a claim for redhibition under Louisiana law, which Vicinay Cadenas believes triggers the arbitration provisions and filed a motion to stay the litigation pending arbitration of that claim. The district court, in our view, erroneously denied that motion and committed two related errors. First, it held or it applied federal common law to determine the arbitrability when the Supreme Court has held that state law governs instead. Second, it held that the claim for redhibition did not trigger the arbitration provisions, even though, as we have now explained in our brief, a claim for redhibition necessarily relies, in this case, on the underlying contract contracts. The reason is because the Louisiana courts have held redhibition arises from the breach of a contractual duty. As such, Petrobras is therefore stopped from denying the applicability of the broad arbitration provisions contained in the contracts on which its claim necessarily relies. In asserting its claim for redhibition, Petrobras is saying, alleging, that the tether chain manufactured by Vicinay Cadenas pursuant to its specifications had a defect that rendered it useless for its intended purpose. But as we have shown under Louisiana law, to resolve that issue, one needs to look at the underlying specifications, because those specifications will tell the decision maker whether or not there is, in fact, a defect. And to put it another way, the specifications will tell the decision maker what is the thing that was being made here and whether that thing was useless for its intended purpose. Now Petrobras, in what we believe is an effort at artful pleading, has said, no, we're not relying on the contracts. We're only relying on oral representations that Vicinay Cadenas allegedly made after the contracts were executed, that it would not weld over any defects found in the chains, and that if a material defect were found, it would scrap the chains. But those statements and that argument does not divorce Petrobras' claim from the underlying agreements, because in order to know, in order to decide whether or not there was, in fact, a defect that was welded over or whether or not there was a material defect that should have required scrapping the chain, one needs to look, again, at the contractual specifications. This is not an ordinary chain, Your Honor. This is, I believe, the largest diameter underwater chain ever constructed. Each link of this chain is almost as tall as a person and weighs more than 1,000 pounds. This is not an off-the-shelf project. This is a highly specialized chain, and the specifications, as we set forth in our brief, are very detailed as to what Petrobras wanted in this chain. And I would add, Your Honors, that after the briefing of this case was closed, Petrobras, actually, in the trial court, made statements stating that it would, in fact, if this case proceeds to trial, rely on the provisions of the purchase agreement to prove that there was, in fact, a retributory defect. And we'd be glad to submit those statements to the court if the court would like. But for all these reasons, we submit that the district court did err in declining to stay this case pending arbitration. Now, just to get to the more specific issues, on the first error, I think it is clear that the district court did err in applying state law, excuse me, federal law, federal common law, to determine the arbitrability of the case. The Supreme Court, in Arthur Anderson, said it is state law that determines whether a nonsignatory is bound to arbitrate under a provision of an arbitration agreement. And this court, in cases like Crawford and Todd, has held that Arthur Anderson has effectively overruled, or as the court has said, modified its earlier decisions, which had applied federal law. One of those decisions is Noble, a key decision that the district court relied on. So that the court, previously, this court did apply federal law. The Supreme Court has now held that state law applies. Then, if you look at state law, I think that's where you find the district court's error. And the state law here is both the law of arbitrability under Louisiana law and the law of retribution. And again, in the Snyder case, which is a Louisiana precedent, the court said that a claim for arbitration, quote, arises from the breach of, arises from the breach of a contractual duty. So it's not necessarily a contractual action itself, but it arises from the breach of a contractual duty. And we have cited cases like Conmeco and engineering sales, where the courts have held that the mere fact that there was a failure in the product doesn't mean there was a retributory defect where the product was manufactured under the buyer's specifications. And we have shown that that is the same here. And I will also point the court to the Louisiana Industries case that we cited in our reply brief. And that case, in fact, involved cement that cracked. And the buyer said there was a retributory defect. And the court said, no, there wasn't, because the reason for the crack was that the manufacturer used the process that the buyer had specified, rather than using reinforced steel. So, too, here, Petrobras' case is, they say, that they are relying on these oral statements that Rivis and Icodanus allegedly made that it would not weld over defects, and that if a material defect were found, it would scrap the chain. But you can't analyze that contention without looking at the contractual specifications, because it is only pursuant to those specifications that you can determine whether or not there was a defect. So, in fact, and again, as I pointed out, we find that in the ongoing trial court proceedings, which are set for trial now in September, Petrobras has, in fact, made statements, has submitted expert testimony that it will, in fact, rely on the contractual specifications to prove its case. We, Rivis and Icodanus, will also be relying on the contractual specifications. We will be contending, in part, that the chain was manufactured and welded pursuant to the specifications that Petrobras itself set forth. Under the law of Louisiana, even a non-signatory to a contract can't avoid the contract, the arbitration provisions, if the claim that it is asserting, whether or not it's a breach of contract claim, or a reddition claim, or a statutory claim, necessarily relies on the terms of the contract. And that's the case here, notwithstanding their attempts at artful pleading. Now, one other thing I would like to point out is that the trial of this case is now scheduled for September 11th. You've told us that three times. I know. We would hope that. We don't need to hear that again. Okay. We would hope, Your Honors, and obviously the others are aware now, but we would hope that the court might be able to resolve this case so they give guidance for the district court and the parties prior to that date, even if it might mean a decision with an opinion to follow. Otherwise, there might be some action needed to take to further defer the trial date, pending a ruling in this case. If there are, I will reserve the remainder of my time. Yes, you have time for rebuttal. Thank you. Mr. McDermott. Thank you, Your Honors, and may it please the court. It's not correct to say that Petrobras' claim is limited to the representations that Visine made shortly after the sale. That is one of the counts in the third amended complaint, count six, I believe. The gravamen of Petrobras' case is the Redhibition claim. The Redhibition claim in count two and the Louisiana Product Liability Law claim in count one. But as to count two, the Redhibition claim, which is the claim that prompts the motion before the court, or the order before the court this morning, all that Petrobras has to do is plead the bases under Louisiana law for the Redhibition claim. And that's exactly what Petrobras has done. Did Judge Hittner apply federal common law or state law regarding arbitrability? You heard what Mr. Franklin said. Yes, yes. Well, you can read the Noble case because I think it's extremely on point. There's no discussion in Noble as to whether it's federal common law as opposed to state law. What did Judge Hittner say? He didn't, he applied Noble. He didn't address whether or not it was federal common law or state law. I would suggest to the court that it's a false issue because there's been no demonstration that Louisiana law were to be applied would be different from the test formulated by the Supreme Court and applied in Noble. In other words, when you look at the Noble case, it's quite clear. It says emphatically that a plaintiff that is not a signatory to an arbitration agreement such as Petrobras does not, does not have to plead the terms of the contract out of which the manufacturer's liability might arise. What do you do with Arthur Anderson as it affects Noble? I don't believe, I don't believe Arthur Anderson undercuts Noble in this case because there's no showing, as I say, of any difference between federal common law on the one hand and Louisiana law on the other. The law of direct benefits estoppel is applicable in many, many states across the country as it is in the federal courts under the federal common law. So, but to go back to the main point is that Petrobras was required only to plead the rudiments, if you will, of its retribution claim, which is what it has done in the third amended complaint. Paragraph 38 tracks Article 2520 of the Louisiana Civil Code. Paragraph 39, excuse me, of the third amended complaint tracks Article 2524 of the Louisiana Civil Code and Paragraph 40 of the third amended complaint tracks Article 2545. That's all, that's all Petrobras is obliged to do in order to state retribution claims against this and under Louisiana law, OQA and others, it is quite clear that a plaintiff suing a retribution does not have to plead the contract under which the manufacturer fabricated the product in question. It is not required certainly to plead any of the underlying specifications in the contract that it did not sign. Mind you, the specifications here are in the purchase order that was signed by Technique on the one hand and by Vis-a-me on the other. Now, it is entirely true that there are specifications in the underlying EPCI contract, but that makes no difference because it's not part of the pleading obligations that burden Petrobras. Petrobras as a non-signatory does not, as a matter of law, have to plead the terms of the manufacturing contract. May not have to, but what, can it avoid the fact that retribution is a contractual remedy? It's a statutory remedy, Your Honor, I believe. It arises, it arises, it arises, of course, out of a... but it's within the contractual provisions of the code. Of the code, yes, but it's, but it, at one point, the Louisiana Supreme Court was quite clear that it's a statutory remedy. It does not depend on the terms of the contract containing the arbitration agreement. But it must arise from a contractual relationship. Well, it has to. I mean, any, any retribution claim ultimately goes back, goes back to... requires arbitration. Yes, but, but again, retribution is a statutory remedy. It is, it is not a contractual remedy. It is not burdened by the contract. Well, that's, that's a word game because the statute is the civil code and contracts are, are provided for by the civil code. Yes. This is not a revised statute, statutory. It's a civil code. See, I, you're exactly right. It's a codal, it's a codal provision, not, not a statutory provision. But I don't, it's a distinction without a difference, I would suggest here, because what the Louisiana law says is that a non-signatory or any plaintiff, for that matter, suing in retribution does not, does not have to sue on the contract. The remedy is provided in the code. It's a legal remedy. It is not a contractual remedy. Does it arise out of a contract? If you go back and peel the onion, of course. But does that make a difference? No. Why not? Because the code remedy exists as a matter of Louisiana law, independent of the terms of the, of the underlying contract. And that is exactly what this court recognized in Noble. Quite specifically, the court said it was sufficient for the plaintiff, the non-signatory, simply to sue on the misrepresentation, to sue on the retribution remedy in the code, and, and not, and not, therefore, plead any of the specifics of the contract containing the arbitration provision. A plaintiff in Petrobras's shoes, as the court held in Noble, can disavow the, the contract, and specifically say that it is not suing on the contract. And that is exactly the case that is presented here. I mean, I, I, this has come up before the district court twice. It came up four years ago when Petrobras sought to amend the complaint. And then it came up again in almost like terms after Petrobras pleaded the third, the third amended complaint. But I, I would invite, I would invite the tribunal to go back to look at, to look at the first order that Judge Hittner issued. It's, it's on all fours, frankly, with the later issue, the later order issued last year. And you'll find it, you'll find it at paragraph 251 of the, of the record. This is the first order, and, and Judge Hittner says as follows, quote, based on the Fifth Circuit's reasoning in Noble, when a plaintiff sues a manufacturer with which it lacks contractual privity, does not base its claim on the manufacturer's contract with the distributor, disclaims any reliance on such a contract, and relies instead, and entirely, on the pre-purchase representation to the defendant, and whatever legal duties are imposed on a manufacturer by law, code provisions, the second alternative prong of direct benefit estoppel does not apply. And that, and that fits this, fits this case, fits this case to a tee. Because the second aspect of the, of the direct benefits estoppel test that Judge Hittner was referring to says that a manufacturer, a non-signatory, excuse me, a non-signatory would be bound, would be bound by the arbitration agreement in the contract that it did not sign, only if its claims can be determined solely by reference, solely by reference to the agreement containing the arbitration clause. And that's not the case here, because the representations are non-contractual, not at all requiring any adjudication of the contract. And equally, the Louisiana Civil Code procedure articles that support, that support the retribution claim are sufficient. That's all Petrobras need do in order to, in order to avoid the arbitration agreement. It has to disavow any, any suit on the terms of the contract, it has done so. And then it can sue in, in misrepresentation, and it can sue, and it can sue in retribution. Now, the argument, the argument is, well, there are these specifications in the contract, the purchase order, between Technique on the one hand, and Vicene on the other. Of course, this is a complicated piece of machinery. This is, this is a product that is ripe with specifications. But that doesn't address the arbitrability issue. If, if Vicene believes that there are specifications in the underlying contract, which afforded a defense, well then, of course, it's free to, to plead those and, and prove them. But that goes, that goes, Your Honors, to the, to the merits of the case, and to whether or not, Vicene can marshal any defense to Petrobras' claims, confined, as I say, to the misrepresentations, and to the retribution provisions of the code. No one, no one is suggesting that if there's a, if there is a, a relevant specification, that it cannot somehow be part of the case. It simply can't be a part of the arbitration application. And that, and that really is, is where it, is where it, is where it ends. Even, even this precise point, I would invite the court to look at Noble, because it was raised in Noble, that the defendants in that case, in order to, in order to preserve what they thought was their arbitration remedy, argued, and you'll find this, you'll find this at page 474 of, of Noble. Appley's argued that Noble's lawsuit is simply an effort to enforce the broke specifications that were included in the purchase order. And the court, this court, said no. That was not, that was not the thrust of, of Noble's claim. It was not, it was not grounding its claim in the specifications. It didn't have to do that. All it had to do was, was plead retribution, and in this case, the misrepresentations. Which is why I say Noble is, is quite a, a good fit for this case. And you can't, you can't throw Noble out the window, because it, it was grounded, arguably, in federal common law, as I say, without any showing. And, and Visna has made no showing that the Louisiana law of the direct benefit to Staple is different from what has hitherto and always been the federal common law. All right, thank you, Mr. McNamara. Are you, are you through? If, if there are no other questions. Thank you. Franklin, you've saved time for your vote. Thank you, Your Honors. I'd like to start with the state versus federal law issue. I, I got the implication from counsel's argument that they are asserting that Noble somehow did not rely on federal common law. I think that's not a tenable reading of the Noble decision. They're just saying, as, as, what I heard, I think I heard it twice, is they're, they're saying that it doesn't matter because state and federal law are, are the same here. That's, that's what I heard. Okay, that was the second point. I just wanted, to, to address the first point, I think Noble does rely on federal common law. It cites Grigson. It relies on other precedents that the court, Grigson is one of the specific precedents that the court in Crawford said had to be modified, essentially overruled, to, to confort with Arthur Anderson. So I do think that, that Noble did rely on federal common law, and it, it is inconsistent to the extent that Noble would hold that a red, a redhibition claim doesn't mandate arbitration when that claim relies on underlying agreements. That is inconsistent with Louisiana law. We've cited the Rustin case, which did involve a redhibition claim where a non-signatory was stopped to, to an arbitration provision in a redhibition action. We've cited other cases, Gunderson and Green, which involved statutory claims. And again, I think counsel's specific distinction here was that redhibition is a statutory claim, therefore it can never rely on a contract. I think that's not correct. While it is a statutory cause of action, the courts in Louisiana have made clear that its essence is arising from the breach of a contractual duty. And whereas here you have very specific contractual specifications, those must as necessary, must inform the, the decision makers. Here we would say it's the arbitrator's determination of whether or not a redhibitory defect occurred. Noble itself I think is distinguishable, frankly, on its facts as well. In Noble you had pre-purchase representations that were essentially advertising materials that informed the buyer what this off-the-shelf product was supposed to be, and that's what they were relying on. Here we don't have that. We have very detailed, as counsel agreed, very detailed specifications about what this one-of-a-kind, highly specialized, custom-made tether chain, underwater tether chain was supposed to be. And I kind of understood the argument, maybe I got it wrong, to be essentially that for purposes of arbitration or deciding arbitration, we can ignore that we're going to rely on the specifications. Then when we get to trial, that's, as I said, that goes to the merits of the case. But that's the point of these arbitration decisions. You have to look at what the merits of the case are going to be to determine whether or not the case should be sent to arbitration in the first place. That puts the cart before the horse. Here, the merits of the case are, in fact, going to rely on the contractual specifications. That invokes estoppel under Louisiana law, and you can't say, well, we're going to argue for purposes of arbitration that, oh, we're not going to, those specifications aren't going to be involved, and then we're going to turn around, and at trial we're going to say, yeah, we are going to look at those specifications. We need to know right now that arbitration is, again, it's a federally favored mode of operation. It's a federally favored mode of dispute resolution, highly favored under federal law, and all doubts are supposed to be resolved in favor of arbitration. In this case, the district court erred because it did not apply Louisiana law to determine that the claim, although it is asserted in Redhibition, necessarily must rely on the contractual specifications in this case. Again, this is not an off-the-shelf product, as was the case in Noble and as may be the case in other Redhibition claims. This is about as highly specialized a product as you can possibly get. No one has ever designed a tether chain of this type for use in underwater operations like this. This is a one-of-the-kind chain. It was manufactured according to detailed contractual specifications. Those specifications necessarily inform the Redhibition argument, the Redhibition claim, whether or not you want to look at the oral representations as well. Those oral representations don't add to the issue. They just refer to a defect and say that we're not going to manufacture a chain or scrap a chain that has a defect. Again, that begs the question, how do you know what's a defect? You do by looking at the contractual specifications. District Court therefore erred by refusing to stay the case pending arbitration, and we ask that the Court reverse that order. All right. Thank you, Mr. Franklin. Your case is under submission. Final case for today, North Cypress Medical Center Operating Company Limited v. Aetna Life Insurance Company.